# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **YOLANDA VIZCARRA CALDERON** <br><br> Plaintiff, <br><br> v. <br><br> **U.S. DEPARTMENT OF HOMELAND SECURITY**, *et al.*, <br><br> Defendants. | Case No. 18-cv-764 (CRC) |
| **RANFIEL CASTANEDA SANCHEZ,** <br><br> Plaintiff, <br><br> v. <br><br> **U.S. DEPARTMENT OF HOMELAND SECURITY**, *et al.*, <br><br> Defendants. | Case No. 18-cv-765 (CRC) |

## MEMORANDUM OPINION

Plaintiffs Yolanda Vizcarra Calderon and Ranifel Castaneda Sanchez want to know why they have been denied visas to enter the United States since 2013. So they have filed Freedom of Information Act requests with various federal agencies that may have information regarding the denials. Two years ago, this Court rejected Plaintiffs' challenge to the Drug Enforcement Agency's response to one such request. See Vizcarra Calderon v. DOJ, 297 F. Supp. 3d 65 (D.D.C. 2018); Castaneda Sanchez v. DOJ, 297 F. Supp. 3d 188 (D.D.C. 2018). In this suit, Plaintiffs lodged various objections to the responses of the U.S. Citizenship and Immigration Service ("USCIS"), Immigration and Customs Enforcement ("ICE"), and the Department of State ("State") to FOIA requests directed to those agencies.

The parties have resolved all the claims regarding Plaintiffs' requests to USCIS and ICE, and Plaintiffs no longer challenge the adequacy of State's searches for responsive records. See Defs.' Mot. for Summ. J. 1 n.1. All that remains are Plaintiffs' challenges to State's use of several FOIA exemptions to withhold 130 documents in full and 11 documents in part.[1] See Pls.' Opp. 10 (challenging only State's use of FOIA Exemptions 3, 5, 7(A), and 7(E)). Because the Court finds that State properly applied Exemption 3 to each withheld document, it will enter summary judgment for the Government and dismiss the case.[2]

Summary judgment may be granted when the moving party establishes that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In FOIA cases, summary judgment is the appropriate mechanism for determining whether an agency has discharged its obligations under the statute. See, e.g., Judicial Watch, Inc. v. CFPB, 60 F. Supp. 3d 1, 6 (D.D.C. 2014). The Court may rely on declarations or affidavits provided by agency personnel that are "relatively detailed and non-conclusory" when ruling on summary judgment. SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted). Such affidavits are "accorded a presumption of good faith." Id.

State asserts FOIA Exemption 3 to justify all of its withholdings. Defs.' Mot. for Summ. J. 8. Exemption 3 permits an agency to withhold information specifically exempted from disclosure by statute, "if that statute requires that the matters be withheld from the public in such

---

[1] State withheld sixty documents in full and five documents in part from Ms. Vizcarra Calderon and seventy documents in full and six documents in part from Mr. Castaneda Sanchez.

[2] Because State properly asserted Exemption 3 for all of its withholdings, the Court need not discuss the parties' arguments related to the other exemptions challenged by Plaintiffs.

a manner as to leave no discretion on the issue; or establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Here, State relies upon section 222(f) of the Immigration and Nationality Act ("INA"), which states:

> The records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential and shall be used only for the formulation, amendment, administration, or enforcement of the immigration, nationality, and other laws of the United States, except [in two narrow circumstances].

8 U.S.C. § 1202(f). The D.C. Circuit long ago held that section 222(f) qualifies as a nondisclosure statute under Exemption 3. Medina-Hincapie v. Dep't of State, 700 F.2d 737, 740–43 (D.C. Cir. 1983). Thus, if State satisfies the Court that the records it withheld "pertain[] to the issuance or refusal of visas or permits to enter the United States," the Court must enter summary judgment for the agency. Section 222(f) of the INA encompasses more than just the information found on a visa application; it also includes any "information revealing the thought-processes of those who rule on the application." Id. at 744.

State represents in two Vaughn indices that all but one of the documents it withheld contain "information used in the course of processing" or "adjudicating" Plaintiffs' visa applications. Weetman Decl. Exh. 1 ("Vizcarra Calderon Vaughn Index"); Id. Exh. 2 ("Castaneda Sanchez Vaughn Index"). It therefore argues that the withheld documents fall directly within the scope of the information deemed to be confidential by the INA and thus are exempt from disclosure. Plaintiffs resist this conclusion on two grounds.

First, Plaintiffs argue that State's descriptions of the documents are inadequate to permit the Court to conduct a de novo review of whether they fall within the bounds of section 222(f). State's Vaughn indices provide ample description of each document, and the Court is satisfied that State has meet its burden to show that each of the withheld documents, save one, were in

3

fact a part of the thought processes that led to the denial of Plaintiffs' visa applications. See, e.g. Vizcarra Calderon Vaughn Index 1 ("[D]ocuments [1–4] are printouts from the Bureau of Consular Affairs' Consular Consolidated Database ("CCD") entitled 'Independent Lookout Accountability.' . . . The documents provide the status of background checks *conducted in the course of processing visa applications* for Ms. Vizcarra Calderon.") (emphasis added); id. at 4 ("[D]ocuments [11–21] provide the details of the results of namechecks *conducted in the course of adjudicating visa applications* for Ms. Vizcarra Calderon.") (emphasis added); Castaneda Sanchez Vaughn Index 16 ("[D]ocument [61] is a printout from the CCD that provides the details of the *result of a case assessment relating to a visa application* by Mr. Castaneda Sanchez.") (emphasis added); id. at 18 ("[D]ocument [67] is a printout from the CCD of applicant details for Mr. Castaneda Sanchez. The document contains *details concerning the adjudication of visa applications* for Mr. Castaneda Sanchez, including consular comments, application data, and other pertinent data.").

Second, Plaintiffs contend that State has not met its burden to show that the requested records are exempt under the INA because the records purportedly reflect Plaintiffs' visa status as "quasi-refusal" [3]—a designation that Plaintiffs argue is "not related to the adjudication of an

---

[3] Plaintiffs believe they have been designated "quasi-refusals" based on documentation received from their ICE FOIA requests. See Pls.' Statement of Material Facts in Genuine Dispute ¶ 2. State refuses to confirm or deny whether Plaintiffs have in fact been tagged as quasi-refusals, but it has explained to the Court that quasi-refusal is a classification akin to a red flag. That is, a "quasi-refusal typically serves as a notation in the Consular Lookout and Support System (CLASS) that an alien may be inadmissible to the United States and therefore should not be issued a visa or other immigration benefit." Weetman Decl. ¶ 29. "If the alien later applies for a visa, or some other immigration benefit, the quasi-refusal will be a factor in determining the alien's eligibility." Weetman Decl. ¶ 29. A quasi-refusal may also be used as "a step toward effectuating the revocation of a visa." Weetman Decl. ¶ 29.

4

actual issued or refused visa" as required to satisfy the INA exemption. Pls.' Opp. 14. Plaintiffs maintain that only the thought processes of those who ruled on actual visa applications may be exempted under the INA, as opposed to information (like quasi-refusals) that may be used to rule on a future application. But the Court need not decide whether a document revealing that State has placed a quasi-refusal designation in a FOIA requester's file is always exempt under section 222(f). Here, State has satisfied its burden to show that all of the records at issue—save one—were used in processing or adjudicating actual visa applications, regardless of whether the records contain a quasi-refusal designation. Both Ms. Vizcarra Calderon and Mr. Castaneda Sanchez applied for visas, and State has declared that all but one of the withheld documents contain information used in considering those applications. See Vizcarra Calderon Vaughn Index; Castaneda Sanchez Vaughn Index. Even if information compiled for the purpose of informing visa decisions is not generally covered by section 222(f) until it is used to adjudicate an actual application—which the Court doubts[4]—it is beyond dispute that such information is exempt when it has in fact been used by State in considering an actual visa application. See Pls.' Opp. 14. Therefore, State has met its burden to show that all but one of the withheld documents are covered by the INA and thus exempt from disclosure under FOIA.

Finally, one document—entitled "Visa Revocation Services"—contains details about visas State issued Ms. Vizcarra Calderon. See Vizcarra Calderon Vaughn Index 13. Plaintiffs

---

[4] The statute's plain language is not limited to actual visa applications; it applies to any information that "pertain[s] to the issuance or refusals of visas." The phrase "pertaining to" "discourages . . . a strict interpretation of Section 222(f)." Airaj v. United States, No. 15-983, 2016 WL 1698260, at *8 (D.D.C. Apr. 27, 2016). And information compiled for the purpose of informing visa decisions appears to easily fall within that scope, even if it is compiled for use on a future application.

contend that visa revocations are not an "issuance" or "refusal," so documents pertaining to visa revocations are not covered by section 222(f) of the INA. There is a split of opinion on this precise question in this district that the D.C. Circuit has yet to resolve. Compare Darnbrough v. Dep't of State, 924 F. Supp. 2d 213, 218 (D.D.C. 2013) (stating in dicta that section 222(f) does not "concern" visa revocations), with Soto v. Dep't of State, No. 14-604, 2016 WL 3390667, at *4 (D.D.C. June 17, 2016) (holding the opposite). This Court, however, is persuaded by Judge Moss' reasoning in Soto. He explained that "the issuance and revocation of visas represent two sides of the same coin." Soto, 2016 WL 3390667, at *4. The text of section 222(f) is sufficiently broad to encompass revocations, even though "issuance of a visa is undoubtedly a distinct act from the revocation of that same visa," because "the relevant question is not one of equivalence but of pertinence." Id. (internal quotation omitted); see also id. ("[A]s a textual mater, a decision to revoke a visa relates to, has a bearing on, or concerns the issuance of the visa—it nullifies that action.") (internal citation omitted). Based on this reasoning, the Court concludes that the document pertaining to a visa revocation was properly withheld under Exemption 3 as well.[5]

---

[5] Plaintiffs also contest the sufficiency of State's segregability declarations and seeks *in camera* review on that basis. Pls.' Opp. 11–12. They question State's segregability analysis as to Exemption 3 only to the extent State would not confirm or deny the presence of "quasi-refusal" designations in this case. Pls.' Opp. 11–12. Because the Court finds that State properly applied Exemption 3 even if quasi-refusals are indicated in the documents, Plaintiffs request for *in camera* review is denied. Regardless, the Court finds that State has met its burden to explain that it conducted a line-by-line review of each withheld document and to show "with reasonable specificity" that there is no further non-exempt information that could be segregated. See Armstrong v. Exec. Office of the President, 97 F.3d 575, 578–79 (D.C. Cir. 1996); see also Beltranena v. Dep't of State, 821 F. Supp. 2d 167 (D.D.C. 2011) (upholding redactions under section 222(f) with a similar level of segregability analysis as here).

For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment.  A separate Order shall accompany this memorandum opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date:  February 18, 2020